[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11450

_____

D.C. Docket No. 0:14-cv-61573-RLR

STEVE EVANTO,

Plaintiff-Appellant,

versus

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 1, 2016)

Before WILLIAM PRYOR and DUBINA, Circuit Judges, and ROBRENO,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

This appeal requires us to decide whether an assignee can be held liable under the Truth in Lending Act for a servicer's failure to provide the borrower with a payoff balance. Steve Evanto sued the assignee of his mortgage after his servicer failed to provide a payoff balance. The Act creates a cause of action against an assignee for a violation that is "apparent on the face of the disclosure statement provided in connection with [a mortgage] transaction pursuant to this subchapter." 15 U.S.C. § 1641(e)(1)(A). Because the failure to provide a payoff balance is not a violation apparent on the face of the disclosure statement, we affirm the dismissal of Evanto's amended complaint.

## I. BACKGROUND

Steve Evanto obtained a home mortgage in 2003 from Amnet Mortgage, Inc. The loan was voluntarily assigned to the Federal National Mortgage Association, or Fannie Mae, and Green Tree Servicing LLC serviced the mortgage at all relevant times. After foreclosure proceedings began, Evanto requested a payoff balance from Green Tree. The Act obligated Green Tree to provide the balance within seven business days, *id.* § 1639g, but Evanto alleges that Green Tree never provided it.

Evanto sued Fannie Mae for Green Tree's failure to timely provide the balance. Fannie Mae moved to dismiss Evanto's amended complaint, and the district court granted the motion.

2

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of a complaint for failure to state a claim, and we accept all plausible factual allegations in the complaint. *World Holdings, LLC v. Federal Republic of Germany*, 701 F.3d 641, 649 (11th Cir. 2012).

## III. DISCUSSION

"A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. "[A]ny creditor who fails to comply" is liable for certain remedies. *Id.* § 1640(a). But the remedies against an assignee of a creditor are more limited.

"[A]ny civil action against a creditor for a violation of this subchapter . . . with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if" two requirements are met. *Id.* § 1641(e)(1). First, "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter." *Id.* § 1641(e)(1)(A). Second, "the assignment to the assignee was voluntary." *Id.* § 1641(e)(1)(B). The Act does not define "disclosure statement."

We conclude that Evanto failed to state a claim against Fannie Mae because the failure to provide a payoff balance is not a violation "apparent on the face of

3

the disclosure statement provided in connection with such transaction pursuant to this subchapter," *id.* § 1641(e)(1). A disclosure statement is a document provided before the extension of credit that sets out the terms of the loan. But a payoff balance can be provided only after a loan has been made and contains the amount yet to be repaid. There is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement. We reach our conclusion based on the plain meaning of the text, and we reject Evanto's argument that we should fix a supposed "loophole" in the statute.

The statute uses the term "the disclosure statement" to refer to documents provided before the extension of credit. Section 1638 uses the term to refer to disclosures that "shall be made before the credit is extended," *id.* § 1638(b)(1), which excludes the payoff balance. In contrast, section 1639g does not use the term "the disclosure statement" or even the word "disclosure." *See id.* § 1639g. We presume that the statute uses the term "the disclosure statement" consistently, *see* Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012), especially because sections 1638 and 1641 connote one particular document by using a definite article ("the") and a singular noun ("disclosure statement"), *see Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Black's Law Dictionary too defines "disclosure statement" as a "document containing relevant information that a reasonable person would find important in making a decision about a transaction or application." *Disclosure*

4

*Statement*, *Black's Law Dictionary* (10th ed. 2014). It further defines "loan-disclosure statement" as a "document setting forth the terms and conditions of a loan, including the amount borrowed, the interest rate, repayment methods, and the rights and responsibilities of the borrower and the lender." *Id.*; *see also Disclosure*, *Merriam-Webster's Dictionary of Law* (2d ed. 2011) ("[A] lender's revelation of information to a consumer under the Truth in Lending Act *that enables the consumer to make an intelligent decision about the loan*.") (emphasis added)).

The Consumer Financial Protection Bureau, the agency responsible for administering the Act, states on its website that a "Truth-in-Lending Disclosure Statement provides information about the costs of your credit." *What Is a Truth-in-Lending Disclosure?*, Consumer Fin. Prot. Bureau, http://www.consumerfinance.gov/askcfpb/180/what-is-a-truth-in-lending-disclosure.html (last updated Oct. 26, 2015) (all Internet materials as visited March 1, 2016, and available in Clerk of Court's case file). It continues, "You receive a Truth-in-Lending disclosure twice: an initial disclosure when you apply for a mortgage loan, and a final disclosure before closing." *Id.* The National Consumer Law Center similarly explains, "The statute requires that closed-end [credit] disclosures be made 'before the credit is extended.'" Nat'l Consumer Law Ctr., *Truth in Lending* § 4.4.1 (quoting 15 U.S.C. § 1638(b)(1)).

5

Although the issue in this appeal is a matter of first impression for any circuit, our interpretation of "the disclosure statement" is consistent with how courts have used the term. The Third Circuit explained in dicta that the Act "provide[s] that *as an incident to the extension of credit*, the creditor must, in most instances, furnish the credit customer with a separate disclosure statement." *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975) (emphasis added). Several circuits, including this one, also have used the term "disclosure statement" to refer to a document provided at or before closing. *See, e.g.*, *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1143–44 (11th Cir. 1994), *abrogated in part on other grounds*, *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996); *Iroanyah v. Bank of Am.*, 753 F.3d 686, 688–89 (7th Cir. 2014); *Vincent v. The Money Store*, 736 F.3d 88, 92 (2d Cir. 2013); *Keiran v. Home Capital, Inc.*, 720 F.3d 721, 724–25 (8th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1152 (2015).

Evanto advances policy reasons for extending the cause of action against assignees to include violations of section 1639g, but this argument fails. "It is a well-established principle of statutory construction that 'when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.'" *Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1248 (11th Cir. 1999) (quoting *Tamiami Partners, Ltd. v. Miccosukee*

6

*Tribe of Indians*, 63 F.3d 1030, 1049 (11th Cir. 1995)). The plain meaning of the statute forecloses Evanto's action, and "[o]ur job is to follow the text even if doing so will supposedly 'undercut a basic objective of the statute,'" *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) (quoting *Baker Botts*, 135 S. Ct. at 2170 (Breyer, J., dissenting)).

## IV. CONCLUSION

We **AFFIRM** the dismissal of Evanto's amended complaint.